J. Randall Jones
Nevada State Bar Number 1927
*r.jones@kempjones.com*
Spencer H. Gunnerson
Nevada State Bar Number 8810
*s.gunnerson@kempjones.com*
KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Pkwy, 17th Floor
Las Vegas, Nevada  89169
Telephone: (702) 385-6000

Timothy C. Meece
*tmeece@bannerwitcoff.com*
Michael J. Harris
*mharris@bannerwitcoff.com*
Audra C. Eidem Heinze
*aheinze@bannerwitcoff.com*
BANNER & WITCOFF, LTD.
Ten South Wacker Drive, Suite 3000
Chicago, Illinois 60606-7407
Telephone: (312) 463-5000

*Attorneys for Plaintiff Bally Gaming, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| BALLY GAMING, INC. | Case No.: |
| Plaintiff, | |
| v. | COMPLAINT FOR PATENT INFRINGEMENT, TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN/UNFAIR COMPETITION |
| ARISTOCRAT TECHNOLOGIES, INC., VIDEO GAMING TECHNOLOGIES, INC., AND ARISTOCRAT LEISURE LIMITED | |
| Defendants. | JURY TRIAL DEMANDED |

Plaintiff, Bally Gaming, Inc. ("Bally Gaming," which includes Bally Gaming, Inc. and its predecessors-in-interest and successors-in-interest), for its complaint against Defendants, Aristocrat Technologies, Inc. ("ATI"), Video Gaming Technologies, Inc. ("VGT"), and Aristocrat Leisure Limited ("Aristocrat Leisure"), for patent infringement, trademark infringement, and false designation of origin/unfair competition arising under the patent and

trademark laws of the United States, 35 U.S.C. §271, *et seq.* and 15 U.S.C. §§1114 and 1125, *et seq.*, and the trademark and unfair competition laws of Nevada, hereby demands a jury trial and alleges as follows:

## THE PARTIES

1.     Bally Gaming is a corporation organized under the laws of the State of Nevada, with a principal place of business at 6650 El Camino Road, Las Vegas, Nevada 89118.

2.     ATI is a corporation organized under the laws of the State of Nevada, with a principal place of business at 7230 Amigo Street, Las Vegas, Nevada 89119.

3.     VGT is a corporation organized under the laws of the State of Tennessee, with a principal place of business at 308 Mallory Station Road, Franklin, Tennessee 37067.

4.     Aristocrat Leisure Limited is a corporation organized under the laws of Australia with a principal place of business at 85 Epping Road, North Ryde NSW 2113, Australia.

5.     On information and belief, ATI and VGT are subsidiaries of Aristocrat Leisure.

6.     On information and belief, Aristocrat Leisure controls and directs ATI and VGT.

7.     On information and belief, Aristocrat Leisure prepares and files consolidated financial statements on behalf of itself, ATI and VGT.  For example, on information and belief, Aristocrat Leisure prepared and filed a consolidated 2015 Annual Report on behalf of itself, ATI, and VGT.  (Exhibit F.)  In its 2015 Annual Report, Aristocrat Leisure refers to ATI and VGT as "controlled entities."  (*Id.*, at p. 108.)  In its 2015 Annual Report, Aristocrat Leisure also states that the "acquisition of Video Gaming Technologies Inc. (VGT) was completed on 20 October 2014" and that "VGT has a complementary product offering and provides a unique opportunity to accelerate our growth in the US recurring revenue segment."  (*Id.*, at p. 21.)  In its 2015 Annual Report, Aristocrat Leisure refers to itself and its controlled entities, including ATI and VGT, as "The Group," and further states that "The Group continued to grow its Class III premium gaming operations footprint through the commercialisation of innovative content and hardware . . . [including Accused Products at issue in this case]."  (*Id.*, at p. 18.)

8.     On information and belief, Aristocrat Leisure, ATI, and VGT have common

directors and officers.  For example, on information and belief, Maureen Sweeny is on Aristocrat Leisure's Executive Leadership Team, she is the Chief Commercial Officer for Aristocrat Leisure and its controlled entities, and she is also a Director of ATI.  (*See* https://www.aristocratgaming.com/about/board-executive-team/ and Exhibit G.)   As another example, on information and belief, Jayme Sevigny is on Aristocrat Leisure's Executive Leadership Team and he is also the President of VGT.  (*Id*.)

9.      On information and belief, Aristocrat Leisure, ATI, and VGT have common business departments.  For example, on information and belief, Maureen Sweeny is the Chief Commercial Officer for Aristocrat Leisure and its controlled entities, including ATI and VGT.  (*See* https://www.aristocratgaming.com/about/board-executive-team/.)

10.     Aristocrat Leisure, ATI, and VGT issued a joint press release on September 14, 2016, in advance of the industry's largest annual trade show, the Global Gaming Expo (the "G2E show").  (Exhibit H.)  The press release states that Aristocrat Leisure, ATI, and VGT will share a booth -- booth #1141 – at the G2E show.  (*Id*.)  The press release also quotes Maureen Sweeny as stating, "[o]ur combined offerings from Aristocrat and VGT present the most diverse product portfolio in gaming, one that has the content, comparability and configurability to appeal to every type of casino player."  (*Id*.)

11.     On information and belief, Aristocrat Leisure, ATI and VGT shared a booth at the 2016 G2E show in Las Vegas, Nevada show where they displayed, promoted, and offered to sell products at issue in this case.

12.     On information and belief, Aristocrat Leisure operates and maintains a website at https://www.aristocratgaming.com/ where it directs visitors, including customers and potential customers, to websites for its controlled entities, including ATI and VGT.

## JURISDICTION AND VENUE

13.     This is an action for patent infringement, trademark infringement, and false designation of origin/unfair competition arising under the patent and trademark laws of the United States, 35 U.S.C. §271, *et seq.* and 15 U.S.C. §§1114 and 1125, *et seq.*, and the trademark

1  and unfair competition laws of Nevada.

2       14.    This Court has jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C.

3  §§ 1331, 1338(a)-(b), and 1367.

4       15.    This Court has personal jurisdiction over ATI because, on information and belief,

5  ATI is incorporated in Nevada and maintains substantial, continuous and systematic contacts in

6  Nevada, ATI has purposefully availed itself of the benefits and protections of Nevada's laws

7  such that it should reasonably anticipate being hauled into court here, ATI transacts business

8  within Nevada, including but not limited to the sale, lease, and/or operation of products at issue

9  in this case, and ATI displayed, promoted, and offered to sell products at issue in this case at the

10  2016 G2E show in Nevada.

11      16.    This Court has personal jurisdiction over VGT because, on information and

12  belief, VGT maintains substantial, continuous and systematic contacts in Nevada, VGT has

13  purposefully availed itself of the benefits and protections of Nevada's laws such that it should

14  reasonably anticipate being hauled into court here, VGT transacts business within Nevada,

15  including but not limited to the sale, lease, and/or operation of products at issue in this case, and

16  VGT displayed, promoted, and offered to sell products at issue in this case at the 2016 G2E show

17  in Nevada.

18      17.    This Court has personal jurisdiction over Aristocrat Leisure because, on

19  information and belief, Aristocrat Leisure maintains substantial, continuous and systematic

20  contacts in Nevada through at least its controlled entities ATI and VGT, Aristocrat Leisure has

21  purposefully availed itself of the benefits and protections of Nevada's laws through at least its

22  controlled entities ATI and VGT such that it should reasonably anticipate being hauled into court

23  here, Aristocrat Leisure transacts business within Nevada through at least its controlled entities

24  ATI and VGT, including but not limited to the sale, lease, and/or operation of products at issue in

25  this case, and Aristocrat Leisure, through at least its controlled entities ATI and VGT, displayed,

26  promoted, and offered to sell products at issue in this case at the 2016 G2E show in Nevada.

27      18.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

4

1

## **BACKGROUND**

2  Bally Gaming Design Patent

3      19.     Founded in 1932, Bally Gaming provides innovative products and designs to the

4  gaming industry.  One example is the design of Bally Gaming's ALPHA 2 Pro Wave product

5  (the "Pro Wave Design").  It is the industry's first cabinet with a curved monitor, and it brings a

6  whole new look and feel to casino floors.  An example of Bally Gaming's Pro Wave Design is

7  shown below.



21      20.     Bally Gaming introduced the Pro Wave Design at the G2E show in 2013.  The

22  Pro Wave Design immediately received industry praise, including at least the following:

23      •     *Global Gaming Business* magazine named the Pro Wave Design the "Best Slot

24           Product" in its 12th Annual Gaming & Technology Awards.  (Exhibit I.)

25      •     The Pro Wave Design was named to the top 10 list in the 8th Annual Slot Floor

26           Technology Awards.  (Exhibit J.)

27      •     *Casino Journal* magazine named the Pro Wave Design one of the Top 20 Most

Innovative Gaming Technology Products of 2013, and of those Top 20 products the Pro Wave Design received the "Gold Award," meaning it received the highest score from the judges.  (Exhibit K.)

- *Casino Enterprise Management* magazine awarded the Pro Wave Design its 2014 Hospitality Operations Technology Award.  (Exhibit L.)

21.    Another of Bally Gaming's innovative designs is its ALPHA Pro Wave 360, which has video toppers forming a 360-degree video display (the "Pro Wave 360 Design").  An example of Bally Gaming's Pro Wave 360 Design is shown below.



22.    Bally Gaming introduced the Pro Wave 360 Design at the G2E show in 2014. Like the Pro Wave Design, the Pro Wave 360 Design received industry praise, including at least the following:

- *Global Gaming Business* magazine named the Pro Wave 360 Design the "Best Slot Product" in its 13th Annual Gaming & Technology Awards.  (Exhibit M.)

- *Casino Journal* magazine named the Pro Wave 360 Design one of the Top 20 Most Innovative Gaming Technology Products for 2014.  (Exhibit N.)

23.     Bally Gaming has taken steps to protect its Pro Wave Design and Pro Wave 360 Design.  Relevant to this dispute, Bally Gaming owns all right, title, and interest in, and has the right to sue and recover for past, present, and future infringement of, U.S. Patent No. RE46,169 (the "'169 Patent"), U.S. Patent No. D714,875 (the "'875 Patent"), and U.S. Patent No. D715,364 (the "'364 Patent") (collectively, the "Bally Gaming Patents").

24.     The U.S. Patent and Trademark Office ("USPTO") duly and legally issued the '169 Patent on October 4, 2016.  A true and correct copy of the '169 Patent is attached to this Complaint as Exhibit A, and a figure from the patent is reproduced below.



25.     The '169 Patent is presumed to be valid.

26.     The USPTO duly and legally issued the '875 Patent on October 7, 2014.  A true and correct copy of the '875 Patent is attached to this Complaint as Exhibit B, and a figure from the patent is reproduced below.



27.	The '875 Patent is presumed to be valid.

28.	The USPTO duly and legally issued the '364 Patent on October 14, 2014.  A true and correct copy of the '364 Patent is attached to this Complaint as Exhibit C, and figures from the patent are reproduced below.

 

29.	The '364 Patent is presumed to be valid.

30.	Without Bally Gaming's authorization, ATI, as controlled and directed by Aristocrat Leisure, has made, used, offered for sale, sold, and/or imported into the United States products having designs that violate the Bally Gaming Patents (hereafter, the "ATI Infringing Products").  The ATI Infringing Products with respect to the '169 Patent include at least ATI's

ARC Single, ARC Double, and ARC Wheel products (the "ARC Products").   The ATI Infringing Products with respect to the '875 Patent and the '364 Patent include at least the Sharknado product that ATI displayed at the 2016 G2E show in Las Vegas, Nevada (the "Sharknado Product").  Examples of the ATI Infringing Products are shown in the table below.

| ARC Single | ARC Wheel | ARC Double |
|---|---|---|



| Sharknado Product |
|---|



31.     The overall appearance of the designs of the Bally Gaming Patents and the corresponding designs of the ATI Infringing Products are substantially the same.

32.     An ordinary observer will perceive the overall appearance of the designs of the Bally Gaming Patents and the corresponding designs of the ATI Infringing Products to be substantially the same.

33.     The table below illustrates the infringement by comparing figures from the Bally Gaming Patents with exemplary images of the ATI Infringing Products.

| Bally Gaming Patent | Example ATI Infringing Product |
|---|---|
|  |  |

| Bally Gaming Patent | Example ATI Infringing Product |
|---|---|
|  |  |
|  |  |



| Bally Gaming Patent | Example ATI Infringing Product |
|---|---|
|  |  |
| |  |

34.     On information and belief, ATI and Aristocrat Leisure have had knowledge of the Bally Gaming Patents.

35.     Bally Gaming has given ATI and Aristocrat Leisure notice of the Bally Gaming Patents, including at least by marking its products pursuant to 35 U.S.C § 287(a).

36.     On information and belief, ATI, as controlled and directed by Aristocrat Leisure, intended to copy the Bally Gaming Patents by creating the same or similar overall impression of Bally Gaming's patented designs.

37.     On information and belief, ATI, as controlled and directed by Aristocrat Leisure, intended to copy, and did copy, the Bally Gaming Patents as evidenced by at least the similarity between the ATI Infringing Products and Bally Gaming's Pro Wave Design and Pro Wave 360 Design.

Bally Gaming Trademarks

38.     Bally Gaming began making, promoting, selling, and/or leasing gaming machines under its EASY MONEY trademark at least as early as 1998.

39.     Bally Gaming subsequently began using other trademarks in the EASY MONEY family in connection with gaming machines, including DOUBLE EASY MONEY beginning in at least 2003 and SUPER EASY MONEY beginning in at least 2007.

40.     Bally Gaming has continued to use its EASY MONEY family of trademarks over the years, including introducing a gaming machine under its EASY MONEY trademark at the G2E show in 2015.

41.     Bally Gaming owns U.S. Trademark Registration No. 3,004,885 for "DOUBLE EASY MONEY" for use on or in connection with "currency and credit operated slot machines and gaming devices, namely, gaming machines for use in gaming establishments" (the "'885 Registration," a copy of which is attached as Exhibit D).

42.     The USPTO issued the '885 Registration on October 4, 2005, and the '885 Registration is incontestable under 15 U.S.C. §§ 1065 and 1115(b).

43.     Bally Gaming owns U.S. Trademark Registration No. 3,399,131 for "SUPER EASY MONEY" for use on or in connection with "gaming machines that generate or display wager outcomes; gaming software that generates or displays wager outcomes of gaming machines" (the "'131 Registration," a copy of which is attached as Exhibit E).

44.     The USPTO issued the '131 Registration on March 18, 2008, and the '131 Registration is incontestable under 15 U.S.C. §§ 1065 and 1115(b).

45.     As a result of its use of its EASY MONEY family of trademarks over the years and its registrations, Bally Gaming owns common law and/or federally registered rights for

EASY MONEY, DOUBLE EASY MONEY, and SUPER EASY MONEY for use in connection with gaming machines (the "Bally Gaming Trademarks").

46. Bally Gaming has given VGT, as controlled and directed by Aristocrat Leisure, notice of its rights in the Bally Gaming Trademarks.

47. Nonetheless, without authorization or permission from Bally Gaming, VGT, as controlled and directed by Aristocrat Leisure, has used, and continues to use, in commerce the Bally Gaming Trademarks and colorable imitation thereof in connection with the sale, offering for sale, distribution, and advertising of gaming machines (the "VGT Infringing Products"). For example, VGT, as controlled and directed by Aristocrat Leisure, is selling, offering to sell, distributing, and advertising a wide area progressive gaming machine platform under the mark EASY MONEY JACKPOT. Below are examples of VGT's use of the Bally Gaming Trademarks and colorable imitations thereof in connection with the VGT Infringing Products.





14

48.    According to VGT, the VGT Infringing Products are "a 3-reel mechanical wide area progressive and appears on top of eight player-favorite VGT game titles: 777 Bourbon Street®, Crazy Cherry®, Hot Red Ruby®, King of Coin®, Lucky Ducky®, Mr. Money Bags®, Reel Fever® and Smooth as Silk®."  (Exhibit O.)

49.    On information and belief, however, VGT is also using the mark EASY MONEY JACKPOT with other game titles and as a standalone mark.  For example, at the 2016 G2E show, VGT, as controlled and directed by Aristocrat Leisure, displayed, promoted, and offered to sell gaming machines bearing EASY MONEY JACKPOT as a standalone mark.  Those gaming machines, which are shown in the photos below, had game titles "Star Spangled Sevens," "Cash Barn," "Crazy Bill's Gold Strike," and "Gems & Jewels."





50.    As can be seen in the examples above, VGT's use of EASY MONEY JACKPOT emphasizes EASY MONEY, such that the wording EASY MONEY is the more dominant element of the mark and JACKPOT is less significant in terms of affecting the mark's commercial impression.

51.    On February 5, 2015, VGT filed a U.S. trademark application for EASY MONEY JACKPOT.  The application is U.S. Trademark Application Serial No. 86525799 for EASY MONEY JACKPOT for use with "gaming devices, namely, gaming machines, slot machines, bingo machines, with or without video input" and "gaming devices, namely, computer software for use with gaming machines to enable the gaming machine to run" (the "VGT Application," a copy of which is attached as Exhibit P).

52.    On February 2, 2016, the USPTO refused the VGT Application because, among other things, the USPTO found a likelihood of confusion between VGT's Application for EASY MONEY JACKPOT and Bally Gaming's '885 Registration for DOUBLE EASY MONEY and Bally Gaming's '131 Registration for SUPER EASY MONEY (the "Refusal," a copy of which is attached as Exhibit Q).

53.    As part of the Refusal, the USPTO found that VGT's Application for EASY

MONEY JACKPOT and Bally Gaming's trademarks for DOUBLE EASY MONEY and SUPER EASY MONEY are "highly similar because they share the identical wording 'EASY MONEY.'" (*Id.*, at p. 3.)

54.     The USPTO also found in its Refusal that VGT's Application for EASY MONEY JACKPOT "does not create a distinct commercial impression because it contains the same common wording as [Bally Gaming's trademarks], and there is no other wording to distinguish it from [Bally Gaming's trademarks]." (*Id.*, at p. 3.)

55.     The USPTO also found in its Refusal that the wording "JACKPOT" in VGT's Application for EASY MONEY JACKPOT is "merely descriptive of or generic for" VGT's gaming machines. (*Id.*, at p. 3.) As such, the UPSTO held that the wording "JACKPOT" in VGT's Application for EASY MONEY JACKPOT is "less significant in terms of affecting the mark's commercial impression, and renders the wording 'EASY MONEY' the more dominant element of the mark." (*Id.*, at p. 3.)

56.     The USPTO also found in its Refusal that VGT's Application for EASY MONEY JACKPOT and Bally Gaming's trademarks for DOUBLE EASY MONEY and SUPER EASY MONEY are "highly similar in sound and meaning" and "impart a confusingly similar commercial impression." (*Id.*, at p. 3.)

57.     The USPTO also found in its Refusal that VGT's and Bally Gaming's goods – as identified in the VGT Application, Bally Gaming's '885 Registration, and Bally Gaming's '131 Registration – are "closely relat[ed] because they are all gaming devices likely to come from a common source." (*Id.*, at p. 4.)

58.     The USPTO also found in its Refusal that "purchasers of [VGT's] goods could mistakenly assume such goods were produced by [Bally Gaming], or that [VGT] and [Bally Gaming] are related in some way." (*Id.*, at p. 4.)

59.     The USPTO also found in its Refusal that "[b]ecause the marks are highly similar and the goods are closely related, the similarities among the marks and the goods are so great to create a likelihood of confusion among consumers as to the source of the goods." (*Id.*, at p. 4.)

60.     Although the USPTO refused the VGT Application, the USPTO gave VGT an opportunity to respond to the finding of a likelihood of confusion.  (*Id.*, at p. 4.)  Specifically, the USPTO stated, "[a]lthough [VGT's] mark has been refused registration, [VGT] may respond to the refusal(s) by submitting evidence and arguments in support of registration." (*Id.*)

61.     Despite an opportunity to do so, VGT did not substantively respond to the USPTO's Refusal and VGT did not attempt to argue against the finding of likelihood of confusion between its application for EASY MONEY JACKPOT and Bally Gaming's trademarks for DOUBLE EASY MONEY and SUPER EASY MONEY.  (Exhibit R.)  Instead, VGT expressly abandoned the VGT Application on August 1, 2016.  (*Id.*)

62.     After the USPTO's Refusal of VGT's Application for EASY MONEY JACKPOT, and after VGT and Aristocrat Leisure had notice of the Bally Gaming Trademarks, VGT nonetheless filed additional intent-to-use trademark applications for POLAR HIGH ROLLER EASY MONEY JACKPOT, HOT RED RUBY EASY MONEY JACKPOT, LUCKY DUCKY EASY MONEY JACKPOT, and MR. MONEY BAGS EASY MONEY JACKPOT all for intended use in connection with "gaming devices, namely, gaming machines, bingo machines, with or without video output" (the "Additional VGT Applications).  (Exhibits S-V.)

63.     The USPTO has refused all of the Additional VGT Applications because it found a likelihood of confusion between the Additional VGT Applications and Bally Gaming's '885 Registration for DOUBLE EASY MONEY and Bally Gaming's '131 Registration for SUPER EASY MONEY.  (Exhibits W-Z.)

## COUNT I – PATENT INFRINGEMENT UNDER 35 U.S.C. § 271
## THE '169 PATENT

64.     Bally Gaming incorporates the allegations in the preceding paragraphs as if fully set forth herein.

65.     Bally Gaming has never licensed or permitted ATI or Aristocrat Leisure to practice any of the legal rights granted under the '169 Patent.

66.     Without authorization from Bally Gaming, ATI, as controlled and directed by

Aristocrat Leisure, has made, used, offered for sale, sold, and/or imported in or into the United States, and continues to make, use, offer for sale, sell, and/or import in or into the United States, at least the infringing ARC Products having designs that infringe the '169 Patent.

67.     By reason of their infringement of the '169 Patent, ATI and Aristocrat Leisure have caused and continue to cause Bally Gaming to suffer damage and irreparable harm.

68.     Bally Gaming has no adequate remedy at law for ATI's and Aristocrat Leisure's infringement of the '169 Patent.

69.     On information and belief, ATI's and Aristocrat Leisure's infringement of the '169 Patent will continue unless enjoined by this Court.

## COUNT II – PATENT INFRINGEMENT UNDER 35 U.S.C. § 271

### THE '875 PATENT

70.     Bally Gaming incorporates the allegations in the preceding paragraphs as if fully set forth herein.

71.     Bally Gaming has never licensed or permitted ATI or Aristocrat Leisure to practice any of the legal rights granted under the '875 Patent.

72.     Without authorization from Bally Gaming, ATI, as controlled and directed by Aristocrat Leisure, has made, used, offered for sale, sold, and/or imported in or into the United States, and continues to make, use, offer for sale, sell, and/or import in or into the United States, at least the infringing Sharknado Product having designs that infringe the '875 Patent.

73.     By reason of their infringement of the '875 Patent, ATI and Aristocrat Leisure have caused and continue to cause Bally Gaming to suffer damage and irreparable harm.

74.     Bally Gaming has no adequate remedy at law for ATI's and Aristocrat Leisure's infringement of the '875 Patent.

75.     On information and belief, ATI's and Aristocrat Leisure's infringement of the '875 Patent will continue unless enjoined by this Court.

**COUNT III – PATENT INFRINGEMENT UNDER 35 U.S.C. § 271**

**THE '364 PATENT**

76.     Bally Gaming incorporates the allegations in the preceding paragraphs as if fully set forth herein.

77.     Bally Gaming has never licensed or permitted ATI or Aristocrat Leisure to practice any of the legal rights granted under the '364 Patent.

78.     Without authorization from Bally Gaming, ATI, as controlled and directed by Aristocrat Leisure, has made, used, offered for sale, sold, and/or imported in or into the United States, and continues to make, use, offer for sale, sell, and/or import in or into the United States, at least the infringing Sharknado Product having designs that infringe the '364 Patent.

79.     By reason of their infringement of the '364 Patent, ATI and Aristocrat Leisure have caused and continue to cause Bally Gaming to suffer damage and irreparable harm.

80.     Bally Gaming has no adequate remedy at law for ATI's and Aristocrat Leisure's infringement of the '364 Patent.

81.     On information and belief, ATI's and Aristocrat Leisure's infringement of the '875 Patent will continue unless enjoined by this Court.

**COUNT IV – TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114**

82.     Bally Gaming incorporates the allegations in the preceding paragraphs as if fully set forth herein.

83.     VGT, as controlled and directed by Aristocrat Leisure, has knowingly used and continues to use in commerce the Bally Gaming Trademarks and colorable imitations thereof in connection with the sale, offering for sale, distribution, and/or advertising of gaming machines, including at least the VGT Infringing Products, in violation of 15 U.S.C. § 1114.

84.     VGT, as controlled and directed by Aristocrat Leisure, has used the Bally Gaming Trademarks and colorable imitations thereof with the knowledge of, and the intent to call to mind and create a likelihood of confusion with regard to the Bally Gaming Trademarks.

85.     Bally Gaming has given VGT and Aristocrat Leisure notice of its Bally Gaming

Trademarks.  VGT and Aristocrat Leisure, nonetheless, continue to use the Bally Gaming Trademarks and colorable imitations thereof.

86.     VGT's use of the Bally Gaming Trademarks and colorable imitations thereof, as controlled and directed by Aristocrat Leisure, constitutes trademark infringement, is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public, and is likely to cause such people to believe in error that VGT's gaming machines have been authorized, sponsored, approved, endorsed, or licensed by Bally Gaming or that VGT or Aristocrat Leisure is in some way affiliated with Bally Gaming.

87.     Bally Gaming has no control over the nature and quality of the goods VGT or Aristocrat Leisure offer, and Bally Gaming's reputation and goodwill will be damaged – and the value of the Bally Gaming Trademarks jeopardized – by VGT's and Aristocrat Leisure's continued use of the Bally Gaming Trademarks and colorable imitations thereof.  Because of the likelihood of confusion between VGT's and Aristocrat Leisure's marks and the Bally Gaming Trademarks, any defects, objections, or faults found with VGT's and Aristocrat Leisure's products will negatively reflect upon and injure the reputation that Bally Gaming has established for the products it offers in connection with the Bally Gaming Trademarks.

88.     VGT's and Aristocrat Leisure's acts alleged above have caused, and if not enjoined will continue to cause, irreparable and continuing harm to Bally Gaming's trademarks, business, reputation, and goodwill.  Bally Gaming has no adequate remedy at law as monetary damages are inadequate to compensate Bally Gaming for the injuries caused by VGT and Aristocrat Leisure.

89.     VGT's and Aristocrat Leisure's infringement of Bally Gaming's registered trademarks is deliberate, willful, fraudulent and without any extenuating circumstances, and constitutes a knowing use of the Bally Gaming Trademarks, and an exceptional case within the meaning of 15 U.S.C. § 1117(b).

90.     Bally Gaming is entitled to injunctive relief and Bally Gaming is also entitled to recover VGT's and Aristocrat Leisure's profits, actual damages, enhanced profits and damages,

costs, and reasonable attorney fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT V – FALSE DESIGNATION OF ORIGIN / UNFAIR COMPETITION UNDER 15 U.S.C. § 1125

91.     Bally Gaming incorporates the allegations in the preceding paragraphs as if fully set forth herein.

92.     VGT, as controlled and directed by Aristocrat Leisure, has used, and continues to use, in commerce the Bally Gaming Trademarks and colorable imitations thereof, as described in this Complaint, which has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that VGT's and Aristocrat Leisure's products bearing the Bally Gaming Trademarks and colorable imitations thereof are manufactured or distributed by Bally Gaming, are affiliated, connected, or associated with Bally Gaming, or have the sponsorship, endorsement, or approval of Bally Gaming.

93.     VGT, as controlled and directed by Aristocrat Leisure, has made false representations, false descriptions, and false designations of Bally Gaming's goods in violation of 15 U.S.C. § 1125(a).  VGT's activities, as controlled and directed by Aristocrat Leisure, have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, as well as injury to Bally Gaming's goodwill and reputation as symbolized by the Bally Gaming Trademarks, for which Bally Gaming has no adequate remedy at law.

94.     VGT's and Aristocrat Leisure's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Bally Gaming Trademarks, to the irreparable injury of Bally Gaming.

95.     VGT's and Aristocrat Leisure's conduct has caused, and is likely to continue causing, substantial injury to Bally Gaming.  Bally Gaming is entitled to injunctive relief and to recover VGT's and Aristocrat Leisure's profits, actual damages, enhanced profits and damages, costs and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116 and 1117.

## COUNT VI – COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

96.     Bally Gaming incorporates the allegations in the preceding paragraphs as if fully set forth herein.

97.     By virtue of having used and continuing to use the Bally Gaming Trademarks, Bally Gaming has acquired common law trademark rights in the marks.

98.     VGT's use of the Bally Gaming Trademarks and colorable imitations thereof, as controlled and directed by Aristocrat Leisure, infringes upon Bally Gaming's interest in common law trademark rights in the Bally Gaming Trademarks and is likely to cause confusion, mistake, or deception among consumers, who will believe that VGT's and Aristocrat Leisure's products originate from, are affiliated with, or are endorsed by Bally Gaming when, in fact, they are not.

99.     As a direct and proximate result of VGT's and Aristocrat Leisure's infringements Bally Gaming has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

100.    In addition to monetary damages, Bally Gaming is entitled to permanent injunctive relief preventing VGT's and Aristocrat Leisure's continued infringement of Bally Gaming's rights in the Bally Gaming Trademarks.

## DEMAND FOR JURY TRIAL

101.    Pursuant to Federal Rule of Civil Procedure 38 and the Seventh Amendment to the Constitution of the United States of America, Bally Gaming hereby demands a trial by jury on all issues raised in this action that are so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Bally Gaming prays that this Court award to it the following relief:

A.      Judgment that ATI and Aristocrat Leisure have infringed the Bally Gaming Patents in violation of 35 U.S.C. § 271;

B.      A permanent injunction against further infringement of the Bally Gaming Patents and colorable imitations thereof by ATI and Aristocrat Leisure, their officers, agents, servants,

employees, and attorneys, and all others in active concert or participation with any of them;

C.     An award of damages adequate to compensate Bally Gaming for the patent infringements that have occurred pursuant to 35 U.S.C. § 284, or an award of ATI's and Aristocrat Leisure's profits from its infringements pursuant to 35 U.S.C. § 289, whichever is greater, together with prejudgment interest and costs;

D.     An assessment of costs, including reasonable attorney fees and expenses, pursuant to 35 U.S.C. § 285, with prejudgment interest;

E.     Judgment that VGT and Aristocrat Leisure have willfully infringed the Bally Gaming Trademarks in violation of 15 U.S.C. § 1114, willfully used false designations of origin/unfair competition in violation of 15 U.S.C. § 1125(a), and willfully violated Bally Gaming's common law rights in the Bally Gaming Trademarks;

F.     A permanent injunction against further infringement, false designation of origin, and unfair competition of the Bally Gaming Trademarks and colorable imitations thereof by VGT and Aristocrat Leisure, their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with any of them;

G.     An award of VGT's and Aristocrat Leisure's profits, actual damages, enhanced profits and damages, costs, and reasonable attorney fees under 15 U.S.C. §§ 1114, 1116, and 1117 for VGT's and Aristocrat Leisure's trademark infringements; and

H.     Such other and further relief as this Court deems just and proper.

Dated: October 7, 2016

/s/ Timothy C. Meece
J. Randall Jones (Nevada # 1927)
Spencer H. Gunnerson (Nevada Bar # 8810)
KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Pkwy, 17th Floor
Las Vegas, Nevada  89169
Tel: (702) 385-6000

Timothy C. Meece
Michael J. Harris
Audra C. Eidem Heinze
BANNER & WITCOFF, LTD.
Ten South Wacker Drive, Suite 3000
Chicago, Illinois 60606-7407
Tel: (312) 463-5000

*Attorneys for Plaintiff Bally Gaming, Inc.*

**INDEX OF EXHIBITS TO COMPLAINT**

| Exhibit | Description |
|---------|-------------|
| A | U.S. Patent No. RE46,169 |
| B | U.S. Patent No. D714,875 |
| C | U.S. Patent No. D715,364 |
| D | U.S. Trademark Registration No. 3,004,885 for DOUBLE EASY MONEY |
| E | U.S. Trademark Registration No. 3,399,131 for SUPER EASY MONEY |
| F | Aristocrat Leisure Limited's 2015 Annual Report |
| G | Nevada Secretary of State report for Aristocrat Technologies, Inc. |
| H | Press Release re 2016 Global Gaming Expo |
| I | Article re 12th Annual Gaming & Technology Awards |
| J | Press Release re 8th Annual Slot Floor Technology Awards |
| K | Article re Casino Journal magazine's Top 20 Most Innovative Gaming Technology Products of 2013 |
| L | Press Release re Casino Enterprise Management magazine's 2014 Hospitality Operations Technology Awards |
| M | Press Release re 13th Annual Gaming & Technology Awards |
| N | Article re Casino Journal magazine's Top 20 Most Innovative Gaming Technology Products for 2014 |
| O | Press Release re EASY MONEY JACKPOT |
| P | U.S. Trademark Application Serial No. 86525799 for EASY MONEY JACKPOT |
| Q | USPTO Office Action dated February 2, 2016, refusing U.S. Trademark Application Serial No. 86525799 for EASY MONEY JACKPOT |
| R | Notice of Abandonment of U.S. Trademark Application Serial No. 86525799 for EASY MONEY JACKPOT |
| S | U.S. Trademark Application Serial No. 86958109 for POLAR HIGH ROLLER EASY MONEY JACKPOT |
| T | U.S. Trademark Application Serial No. 86958118 for HOT RED RUBY EASY MONEY JACKPOT |
| U | U.S. Trademark Application Serial No. 86958097 for LUCKY DUCKY EASY MONEY JACKPOT |
| V | U.S. Trademark Application Serial No. 86958093 for MR. MONEY BAGS EASY MONEY JACKPOT |
| W | USPTO Office Action dated July 14, 2016, refusing U.S. Trademark Application Serial No. 86958109 |
| X | USPTO Office Action dated July 14, 2016, refusing U.S. Trademark Application Serial No. 86958118 |
| Y | USPTO Office Action dated June 1, 2016, refusing U.S. Trademark Application Serial No. 86958097 |
| Z | USPTO Office Action dated June 1, 2016, refusing U.S. Trademark Application Serial No. 86958093 |